UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-63162-CIV-COHN/STRAUSS

W.P. PRODUCTIONS, INC.,

    Plaintiff,

v.

TRAMONTINA USA, INC. and
SAM'S WEST, INC.,

    Defendants.
_____/

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on three Motions for Summary Judgment: (1) Defendant Sam's West's Motion for Summary Judgment as to Plaintiff's Claims [DE 72], (2) Defendant Tramontina U.S.A. Inc.'s Motion for Summary Judgment [DE 75], and (3) Sam's West Inc.'s Motion for Summary Judgment as to Counts I and II of its Counterclaim [DE 64] (collectively, "Motions"). The Court has considered the Motions, all relevant briefing, and the record in this case, and is otherwise advised in the premises. For the reasons that follow, the Court will grant all three Motions.

### I. BACKGROUND

Plaintiff W.P. Productions ("WPP") is a company based in Hollywood, Florida that manufactures stainless steel cookware. The company was founded in 1995 by Sydney Silverman, its President, and Arnie Simon its Executive Vice President. DE 1 ¶¶ 8–10 (Pl.'s Compl.). Around 1995, WPP entered into a licensing agreement with celebrity chef Wolfgang Puck for the use of Puck's name and likeness in the branding and marketing of WPP's products. Id. ¶ 13. Until 2016, WPP sold its Wolfgang Puck-

branded cookware sets at the national retail outlet Sam's West, Inc. ("Sam's Club"), one of the two defendants in this case. Id. ¶ 18.

In 2016, Sam's Club received customer complaints that some of the pieces in WPP's cookware sets exhibited rust and corrosion. DE 76 ¶ 1. In response to these complaints, Sam's Club hired a third-party testing company, Consumer Testing Laboratories, Inc. ("CTL") to conduct two rounds of tests on WPP's cookware sets. In the first round of tests, CTL tested cookware sets pulled from ten randomly selected Sam's Club stores and found evidence of corrosion in four out of ten sets. DE 1 ¶¶ 62–63. The second round of tests from 49 Sam's Club stores again resulted in a fail rating. Id. ¶ 81. Following these failed tests, Sam's Club asked WPP to buy back all 15,000 of its cookware sets and offered to repurchase the sets that passed inspection. DE 76 ¶ 7. WPP rejected Sam's Club's offer and attempted to negotiate a better deal, but the parties ultimately failed to reach an agreement. DE 1 ¶¶ 65–90; DE 76 ¶¶ 5–9. As a result, Sam's Club removed all 15,000 of WPP's cookware sets from its shelves and ceased purchasing WPP's cookware in November 2016. DE 1 ¶¶ 90–91.

After losing its contract with Sam's Club, WPP hired a third-party company, Rymax, to pitch its cookware sets to Costco, an effort which was ultimately unsuccessful. DE 76 ¶18; DE 1 ¶¶ 103–15. WPP believes that this effort failed because the CEO of Tramontina, a rival cookware manufacturer and the other defendant in this case, told Costco that WPP's cookware sets had been "subject to recall" by Sam's Club. DE 1 ¶ 107; DE 88 ¶¶ 112.

On December 28, 2018, WPP filed a four-count complaint against Sam's Club and Tramontina, alleging (1) that Tramontina tortuously interfered with WPP's business

relationship with Sam's Club (Count I); (2) that both Defendants tortuously interfered with WPP's prospective business relationship with Costco (Count II); (3) that both Defendants defamed WPP (Count III); and (4) that both Defendants committed civil conspiracy against WPP (Count IV).  On July 30, 2019, the Court denied Defendants' Motions to Dismiss.  DE 47.

In its Response to Defendants' Motions for Summary Judgment, WPP now states that it "has decided to voluntarily dismiss [its] Claims on Counts I and IV, but puts forward evidence herein related to Counts II and III against Tramontina."  DE 89 at 1, n.1.  Thus, WPP has effectively abandoned its claims against Sam's Club entirely, so the Court will grant Sam's Club's Motion by default.  All that remains, then, is Tramontina's Motion for Summary Judgment on Counts II and III.  Also before the Court is Sam's Club's Motion for Summary Judgment on Counts I and II of its counterclaim, in which Sam's Club alleges that WPP failed to make payments on several agreements to feature its cookware in Sam's Club's Instant Savings Booklet in 2015 and 2016.  DE 64.

## II. LEGAL STANDARD

The Court will grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56, the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party may not rely merely on allegations or denials in its own pleading, but instead must come forward with specific facts showing a genuine issue for trial.  Id. at 587.

As long as the nonmoving party has had ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

## III. DISCUSSION

### A. Tramontina's Motion for Summary Judgment on WPP's Claims

As noted above, all that is left of WPP's claims are Counts II and III against Tramontina: tortious interference with WPP's prospective business relationship with Costco and defamation.  Because discovery failed to turn up any evidence supporting either claim, the Court will grant Tramontina's Motion for Summary Judgment.

#### 1. WPP's Tortious Interference Claim

In Florida, the elements of tortious interference with a business relationship are: "(1) the existence of a business relationship … (2) knowledge of the relationship on the

4

part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla.1985)). To support a tortious interference claim, the plaintiff must prove that "the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., 832 So. 2d 810, 814 (Fla. 2d DCA 2002).

      WPP has failed to produce any evidence that Tramontina intentionally interfered with its prospective business relationship with Costco. WPP offers only a self-serving declaration from its President, Sydney Silverman, who speculates that because Costco decided not to purchase WPP's cookware, Tramontina must have maligned his product to Costco. DE 88-1 ¶ 16. To support this theory, WPP points to an unrelated email from Tramontina's CEO, Antonio Galafassi, to CTL, the consumer testing company, in which Galafassi asks CTL to expedite testing of Tramontina's cookware because "yesterday, our merchants at Sam's Club [ ] selected this cookware set to replace an item currently in the club that may be subject to a recall." DE 88-2 at 53 (Pl.'s Ex. F). Based on this email, WPP claims that Galafassi must have also told Costco that WPP's cookware was "subject to recall" because, according to WPP, Galafassi "had motive, information, knowledge, [and] reason" to spread false information about his competitor's cookware. DE 89 at 2. But WPP has not identified a single statement by Galafassi to Costco that mentions WPP, let alone any statements about WPP's product being "subject to recall."

5

In the absence of any evidence, WPP instead attempts to use rumors, conjecture and inadmissible hearsay to create a genuine dispute.  In his declaration, Silverman claims that Marc Farbstein, then-President of Rymax, told him that he had heard a rumor that "someone advised [Costco] that WPP was thrown out of Sam's as the sets were rusted out or subject to a recall." DE 88-1 ¶ 45.  Based on this alleged rumor—which has not been corroborated by Farbstein himself—WPP argues that a reasonable juror could infer that Galafassi must have told Costco that WPP's cookware was "subject to recall."  But, putting aside the multiple levels of hearsay in Silverman's declaration, WPP has not identified a single witness from Costco who heard anyone from Tramontina mention WPP.  WPP has not uncovered a single written communication between Tramontina and Costco that mentions WPP.  Silverman admitted at his deposition that he had no knowledge of any statements made by Tramontina to Costco about WPP's product.  See Silverman Dep., DE 76-2 at 43:1-46:10.  In short, WPP's allegation that Tramontina interfered with its prospective business relationship with Costco is based on nothing more than speculation.  "The non-movant may not avoid summary judgment with speculation, conjecture, or simply by relying on her unsworn pleadings or presenting a mere scintilla of evidence in support of her claims. Rather, she must present evidence on the basis of which a jury reasonably could find in her favor." Corzine v. Little League Baseball Inc., 589 Fed. App'x 482, 483 (11th Cir. 2014) (citing Brooks v. County Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162 (11th Cir.2006)).  Because WPP relies solely on speculation, it cannot defeat summary judgment on its tortious interference claim.

### 2. WPP's Defamation Claim

WPP has also failed to put forth any evidence to support its defamation claim.  In Florida, defamation has the following five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).

Because WPP has not uncovered any false statements made by Tramontina that would support its tortious interference claim, its defamation claim would seem to erode as well.  Yet in an effort to salvage this claim, WPP again points to the email from Galafassi to CTL.  WPP claims that the phrase "subject to recall" was false and defamatory.  But WPP's cookware was in fact "subject to recall" by Sam's Club.  It is undisputed that Sam's Club removed all 15,000 of WPP's cookware sets from its shelves after product tests revealed rust and corrosion issues.  WPP insists that the term "recall" must mean that "the product is a danger and threat to injure others."  DE 88-1 ¶ 16.  But Sam's Club's Supplier Agreement with WPP defines "recall" as "any removal of Merchandise from the stream of commerce or the issuance of a corrective action plan or other remedial action initiated by Supplier, a government entity or Company."  DE 66-2 at 2 ¶ 1(f).  Thus, Galafassi's statement that WPP's cookware was "subject to recall" was not false and cannot form the basis of a defamation claim.

### B. Sam's Club's Motion for Summary Judgment on Counts I and II of its Counterclaim

Sam's Club moves for summary judgment on two breach of contract counterclaims.  Sam's Club alleges that WPP failed to make payments on several

agreements to feature its product in the Sam's Club "Instant Savings Booklet" ("ISB"). Several times per year, Sam's Club selects certain products to feature in its Instant Savings Booklet, a discount catalogue sent to all Sam's Club members. DE 66 ¶ 5. A vendor who participates in the ISB promotion agrees to pay Sam's Club a set amount per item sold during the promotion to cover a portion of the discounted price, in consideration of expected additional sales. DE 21 ¶ 7. After selecting a product, Sam's Club notifies the vendor of the proposed discounted price, the number of units Sam's Club anticipates will sell during the promotional term, and the amount of the vendor's contribution to Sam's Club for each item sold. DE 66 ¶ 6. If the vendor accepts Sam's Club's offer, it has entered into an ISB Savings Program Agreement. Id. ¶ 7.

Count I alleges that WPP failed to pay Sam's Club for featuring its 18-piece cookware set in the September 2015 ISB and its stainless steel mixing bowls in the November 2015 ISB. Id. ¶¶ 9–12. Sam's Club alleges that after WPP failed to pay the amounts due on the two 2015 ISBs, WPP and Sam's Club executed a Claim Installment Payment Agreement (the "Promissory Note") to secure WPP's payment on those two ISBs. Id. ¶ 15. It is undisputed that WPP never made the last four scheduled payments on the Promissory Note, totaling $1,306,128.00 inclusive of prejudgment interest. Id. ¶ 18; DE 81-1 ¶ 18.

Count II alleges that in a separate transaction in early 2016, WPP agreed to again feature its stainless steel mixing bowls in the November 2016 ISB. DE 66 ¶ 20. It is also undisputed that WPP failed to make payments on that 2016 ISB agreement, which totals $1,366,849.86, inclusive prejudgment interest. DE 64 ¶ 10. In all, Sam's

Club alleges that WPP owes it $2,672,977.86, inclusive of pre-judgment interest, on three ISB agreements.

WPP counters with several arguments, none of which are availing.  First, WPP offers the somewhat perplexing argument that it does not owe Sam's Club for the ISBs because those agreements were separate from the Supplier Agreement – the contract that governed the entire business relationship between WPP and Sam's Club.  WPP appears to underscore that these were separate agreements to make two points, both of which are misplaced.  First, WPP contends that the choice of law provision in the Supplier Agreement—which mandates that Arkansas law govern all disputes arising from or relating to that Agreement—does not govern the ISB agreements.  Even if WPP were correct, however, it is irrelevant whether the choice of law provision governs the ISB agreements because the elements of a breach of contract claim are not materially different under Florida and Arkansas law, and both states have five-year statutes of limitations for breach of contract claims.  See Fla. Stat. § 95.031(1); Ark.Code § 16–56–112.  WPP has not shown how the application of Florida law would alter the outcome of Sam's Club's counterclaims.

Second, WPP contends that because the ISB agreements were not included in the Supplier Agreement, they were not supported by consideration.  WPP argues that Sam's Club forced WPP to participate in the ISBs, claiming "Sam's decides it will punish a supplier by forcing them to do Sam's a favor and put a product into an Instant Savings Booklet at a discounted price so Sam's can look good in the eyes of its customers … [t]here is no consideration."  DE 81 at 3.  But the fact that these ISB agreements were separate from Supplier Agreement in fact undermines WPP's position that the ISB

agreements were not supported by separate consideration.  The record plainly shows that Sam's Club offered to place WPP's products in its discount catalogue in exchange for WPP's payment for space in the catalogue and for a portion of the discounted price per unit.  Nothing in the record supports WPP's contention that it was forced to participate in the ISBs.  In fact, WPP's VP Arnold Simon acknowledged at his deposition that WPP voluntarily entered into the ISB agreements.  See Simon Dep., DE 66-3 at 152:23–153:13.  Even if WPP ultimately did not profit from the ISB agreements, that does not mean they were not supported by consideration; the consideration was Sam's Club's promise to put WPP's cookware sets in the catalogue.  See Trakru v. Mathews, 2014 Ark. App. 154, 158, 434 S.W.3d 10, 16 ("Consideration is any benefit conferred or agreed to be conferred upon a promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by a promisee, other than that which he is lawfully bound to suffer.")  Thus, the ISB agreements are valid and enforceable contracts and WPP's argument that they are not supported by consideration is without merit.

Next, with respect to Count I, WPP argues that the Promissory Note "on its face gives no right to Sam's West Inc., but instead is a separate agreement between Walmart Stores, Inc. and WPP."  DE 81 at 4.  In effect, this is an argument that Sam's Club, because it is not named in the contract, does not have standing to sue for breach of contract.  This argument is without merit because the Supplier Agreement, which controls the parties' relationship, defines "Walmart" to include all of Walmart's subsidiaries.  DE 66-2 at 1.  There is no dispute that Sam's Club is a subsidiary of Walmart.  DE 21 ¶ 19.  And WPP's President acknowledged at his deposition that the ISB agreements were with Sam's Club.  See Silverman Dep., DE 66-1 at 126:6-15.

WPP further contends with respect to Count I that Sam's Club has not produced the original Promissory Note and its failure to do so is fatal to its claim under Florida law. But Sam's Club did produce a copy of the original Promissory Note, which is attached as "Exhibit F" to its Statement of Material Facts. See DE 66-6. The Promissory Note is signed by Sydney Silverman, WPP's President. Id. There is no dispute as to the authenticity of the note.

Finally, with respect to Count II, WPP argues that these agreements are memorialized only by "a series of unsigned emails." DE 81 at 5. But under the merchant exception to the Arkansas Statute of Frauds—as well as under the Uniform Commercial Code—emails suffice as written confirmation of a contract between merchants. See Ark. Code Ann. § 4–2–201(2); Stephens Prod. Co. Cont'l Properties, LLC v. Enable Gas Transmission, LLC, No. CV 13-2219, 2014 WL 11514531, at *2 (W.D. Ark. Feb. 26, 2014) (citing Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc., 365 Ark. 573, 578, 231 S.W.3d 720, 724 (2006)) ("An email can be sufficient to satisfy [the Arkansas Statute of Frauds] as long as the email indicates the consummation of a contract, and not mere negotiations"). WPP's VP Simon agreed to the terms of the 2016 ISB in an email dated May 19, 2016. See DE 66-9 at 1 (Def.'s Ex. I). WPP never objected to the terms and accepted Sam's Club's performance of the contract.

Moreover, even if there were no emails confirming the 2016 ISB agreement, the record still establishes the existence of this contract. As with the Promissory Note, Simon acknowledged the existence of the 2016 ISB agreement at his deposition. See Simon Dep., DE 66-3 at 178:11-18. "An oral agreement can be taken out of the statute of frauds if the making of the oral contract *and its performance* is proven by clear and

convincing evidence," which includes testimony "by a credible witness." Cobb v. Leyendecker, 89 Ark. App. 167, 170, 200 S.W.3d 924, 926 (2005) (emphasis added). There is no dispute that Sam's Club performed its end of the bargain on the 2016 ISB agreement. WPP's contention that these agreements can only be proven by a signed written instrument is without merit. Accordingly, Sam's Club is entitled to summary judgment on Counts I and II of its counterclaim.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Sam's West, Inc.'s Motion for Summary Judgment as to Plaintiff's Claims [DE 72] is **GRANTED.**

2. Defendant Tramontina U.S.A. Inc.'s Motion for Summary Judgment [DE 75] is **GRANTED**. Tramontina U.S.A. Inc. is hereby **DISMISSED** as a party to this action.

3. Defendant Sam's West Inc.'s Motion for Summary Judgment as to Counts I and II of its Counterclaim [DE 64] is **GRANTED**.

4. On or before **June 26, 2020**, Defendant Sam's West, Inc. shall file a status report indicating the status of the remaining counts of its Counterclaim.

5. The Court will enter a separate final judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 12th day June, 2020.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF