# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

W.P. PRODUCTIONS, INC.                            PLAINTIFF

v.            Case No. 18-CV-63162-JIC

TRAMONTINA U.S.A., INC.,
and SAM'S WEST, INC.                             DEFENDANTS

## MOTION FOR PROCEEDINGS SUPPLEMENTARY

Defendant Sam's West, Inc. ("defendant" or "Sam's Club"), for its Motion for Proceedings Supplementary pursuant to Fed R. Civ. P. 69 and Section 56.29 of the Florida Statutes, states:

## INTRODUCTION

1. This Court entered two final judgments in defendant's favor against plaintiff W.P. Productions, Inc. ("WPP"), entered on June 12, 2020 and October 2, 2020, respectively. The June judgment is in the principal amount of $2,672,977.86 on defendant's counterclaim, and the October judgment is for attorneys' fees in the amount of $58,573.50. The judgments are not satisfied.

2. Defendant moves for proceedings supplementary to collect the judgments.

3. Sydney I. Silverman, the sole shareholder of WPP, is the alter ego of WPP according to a final judgment entered against him in the State of California.

1

Defendant seeks to use the alter ego ruling under preclusion principles in this case to initiate collection proceedings against Silverman on the judgments in this action.

### A.     The Alter Ego Determination

4.     WPP's business with defendant involved sales of Wolfgang Puck branded kitchen products under a vendor agreement that is in the record as DE 22-1. WPP received the right to use Wolfgang Puck's brand and name in selling the cookware under a license agreement originally granted by Wolfgang Puck and Barbara Lazaroff on January 5, 1995 and amended over the years.

5.     WPP sold hundreds of millions of dollars in Wolfgang Puck products under the license agreement through various sales channels, including defendant as well as Home Shopping Network.

6.     WPP owed royalties under its license agreement, and in 2017 the licensors initiated an arbitration against WPP and its affiliate, W.P. Appliances, Inc., ("WPA") for underpayment of royalties and overstatement of deductions under the license during the period 2011 through 2015. The arbitration resulted in an award against WPP in the amount of $2,430,850.89.

7.     The licensors obtained a judgment confirming the arbitration award in *Wolfgang Puck and Barbara Lazaroff v. W.P. Productions and W.P. Appliances, Inc.*, Los Angeles, California Superior Court Case No. BS173923, on July 25, 2018.

8.  The licensors moved to amend the arbitration judgment to include Silverman individually as the alter ego of WPP and W.P. Appliances on October 17, 2018.

9.  Silverman removed the matter to the U.S. District Court for the Central District of California, where it was assigned Case No. 2:18-cv-9708-JAK-SS. The district court remanded the case back to state court for lack of federal jurisdiction on March 4, 2019.

10. By minute order and second amended judgment entered on May 17, 2019, the California court determined Silverman is the alter ego of WPP and W.P. Appliances. Both documents are attached as exhibits to the Affidavit of Jess Askew III.

11. Silverman appeared in the state court through his counsel and actually contested the alter ego motion.

12. Puck and Lazaroff presented evidence that in the last six months of 2018:

   a. Silverman commingled his personal funds with WPP's.

   b. Silverman failed to segregate funds among WPP and W.P. Appliances, together with another wholly owned entity, Sisco Financial Services, Inc.

    c.    There were numerous transfers among Silverman and these three entities.

    d.    Silverman made all strategic decisions for the entities and threatened to shut down WPP and W.P. Appliances if Puck and Lazaroff tried to collect the arbitration judgment.

    e.    WPP paid personal credit-card expenses of Silverman.

    f.    WPP and W.P. Appliances diverted revenues to avoid paying the arbitration judgment.

    g.    Silverman referred to the license agreement and the debts of WPP as his own.

13.    The Superior Court found that it had personal jurisdiction over Silverman in connection with the arbitration judgment.

14.    Based on the evidence and argument at the hearing, the Superior Court found Silverman is WPP's alter ego, and amended the arbitration judgment to include Silverman as a judgment debtor.

15.    Silverman filed a notice of appeal of the alter-ego ruling and the second amended judgment in the state court on July 18, 2019. As described below, Silverman satisfied the arbitration judgment during collection proceedings in the state courts of Florida about 90 days after he filed the appeal. He defaulted in

prosecuting the California appeal, and the California Court of Appeal dismissed his appeal on January 16, 2020.

16. Silverman appeared and defended the alter-ego motion in California, appealed the adverse ruling, and failed to carry out his appeal. The alter-ego ruling in the second amended judgment is a full and final judgment against Silverman and WPP.

### B.     WPP Arbitration Judgment Paid in Florida by Silverman

17. Puck and Lazaroff recorded the arbitration judgment in Broward County and began collection efforts in Broward County, Florida Case No. CACE18028450.

18. As a judgment debtor, Silverman was required to complete Form 1.977, Fact Information Sheet, under oath. He failed to do so, and on September 10, 2019, the Broward County Circuit Court compelled him to complete that form within 20 days.

19. Silverman refused to comply with the court order, and on October 2, 2019, Puck and Lazaroff moved to find Silverman in contempt of court.

20. On October 24, 2019, the Broward County Circuit Court entered an order holding the contempt motion under advisement and allowing Silverman to avoid having to comply with the September 10 order if Silverman paid the net amount of the arbitration judgment that remained unpaid within one week.

21. Silverman immediately paid the arbitration judgment, as he revealed in his deposition in this action on October 28, 2019. Askew Aff., Exhibit 11 (Silverman Oct. Depo), at Tr. 29-30. He testified that he lent the money to pay the judgment to WPP, one of the three judgment debtors.

22. When he arranged to pay the arbitration judgment, Silverman testified, WPP was no longer in business and he had no idea how he would be repaid. *Id.* at Tr. 30.

23. At some point during the Florida collection process, Silverman filed a notice of appeal from a ruling of the Broward County Circuit Court to the Florida District Court of Appeal, Case No. 4D19-2719. He dismissed that appeal on November 4, 2019.

### C. Silverman's Efforts to Impede Collection Against WPP

24. In addition to the $2.7 million that WPP owes defendant from this case, WPP also has an unsatisfied judgment from a Chinese manufacturing vendor, Shanghai Kingbow, for more than $200,000. Silverman testified at his deposition on November 15, 2019 that the judgment was due to nonpayment by WPP. He said WPP did not have the money to pay the judgment. This testimony came within a month after Silverman lent WPP $2.5 million to pay the arbitration judgment, on which he was personally liable.

25. Silverman testified in November 2019 that WPP did not have the money to pay WPP's debts to the defendant that are now included in the judgments from this Court. Askew Aff., Exhibit 12 (Silverman Nov. Depo.), at Tr. 186-87.

26. Yet in July 2016, Silverman testified, when Puck and Lazaroff initially presented the license audit and demanded $795,000 in unpaid royalties, WPP could have written a check in that amount to resolve the matter and maintain its Wolfgang Puck license. *Id*., at Tr. 162, lines 19-22.

27. Silverman testified that the decision whether to pay or not pay based on the royalty audit "was my decision," *id.* (Tr. 162, line 4), and the only reason he decided to resist was he thought the audit was wrong.

> Q: Why didn't WPP simply pay the amount that Wolfgang Puck claimed was due in July of 2016?
>
> A: Okay. That's a fair question.
>
> Because we didn't believe we totally—we owed them that and we had been—we—I had this licensing agreement since 1995, I had sent them forty-eight million dollars rough, give or take twelve cents, and they audited us I believe once before in 2004 and came up with nothing and the audit that they performed we felt the auditor was—was not really a terrific auditor, Arnie [Simon] handled this by the way, that he handled all of the financials for the company and that was his number that we—he made a mistake. We owed him eight hundred thousand dollars and we're perfectly willing to pay, or I was perfectly willing to pay, it was my decision, and when California got done with interest—and their number I think was a million four I decided that, you know, I wanted to dispute it.
>
> The—if you looked at what we paid them the million dollars or roughly million four was less that one percent of what I have sent them, so it wasn't going to be an issue whether I wanted to continue or not.

7

\* \* \*

Q: Was WPP in a cash flow crunch in July of 2016?

A: I don't believe we were.

Q: Could WPP have simply written a check to Wolfgang Puck for seven hundred and ninety-five thousand dollars—

A: Yes.

Q: -- and resolved this arbitration?

A: Yes.

Askew Aff., Exhibit 12, at Tr. 161, line 14 – 162, line 24.

28. By refusing to pay or resolve this license issue in 2016, Silverman charted a course that resulted in WPP's admitted current insolvency. *Id.*, at Tr. 188, lines 20-21.

29. After obtaining their arbitration award two years later, Puck and Lazaroff terminated WPP's license for the Wolfgang Puck brand. Silverman recognizes this eliminated WPP's ability to sell Wolfgang Puck branded items at all. *Id.*, at Tr. 164, line 22 – 165, line 5.

30. At roughly the same time as the Puck and Lazaroff royalty audit was underway, WPP began to fail to pay defendant amounts owed on account, leading to the defendant's counterclaims and judgments. WPP signed the Claim Installment Payment Agreement with defendant on April 21, 2016 and made its last payment under that note in September 2016. WPP's failure to pay the 2016 ISB debt was

ripening at about the same time. DE 104, Order Granting Motions for Summary Judgment, pages 8-9.

31. Yet in the same time frame, defendant paid WPP $3 million for other Wolfgang Puck product in fall 2016. Askew Aff., Exhibit 12 (Silverman Nov. Depo.), at Tr. 131, lines 20-22). Silverman could not explain why WPP did not use some of that money to pay the defendant's note. *Id.* at line 25.

32. Silverman explained that 60% of WPP's total Wolfgang Puck kitchenware sales were on Home Shopping Network, 30% were to defendant, and the remaining 10% were to others. *Id.*, at Tr. 169, lines 8-15. Over the life of the license agreement, Silverman testified that he paid $48 million in royalties to Puck and Lazaroff. *Id.*, at Tr. 161, lines 18-21. At a royalty rate ranging from 7% for sales to defendant to almost 9% for certain sales on Home Shopping Network, the $48 million in royalties implies well more than half a billion dollars in sales over the years. Silverman agreed it was possible the sales could have been $900 million or more. *Id.*, at Tr. 186-87.

33. After Puck and Lazaroff terminated the license agreement, Silverman kept WPP alive as a legal entity even though he shut down its operations. His movements of funds in and out of WPP and its related Wolfgang Puck business entities to facilitate this shutdown are partially captured in the findings of the Superior Court of Los Angeles County. Askew Aff., Exhibit 3 at 8.

34. Though he shut down operations at WPP, Silverman engineered this lawsuit, which was filed in the last week of 2018, after Puck and Lazaroff had moved to include him on the arbitration judgment as WPP's alter ego.

35. In its pleadings in this case, WPP concealed its loss of the license and the obvious impossibility of future sales of the branded product. Notwithstanding this, WPP sought damages for loss of future sales of the Wolfgang Puck product, and left it for defendant to uncover in discovery WPP's previous loss of the license and cessation of business operations.

36. Defendant requested in discovery WPP's business records and tax returns that would show the sources and uses of funds throughout the relevant period from 2016 through 2018. WPP never produced this information before entry of the judgments.

### D. Procedural Matters and Relief Requested

37. Defendant seeks to execute and collect the judgments in this action directly against Silverman as WPP's alter ego.

38. The alter ego determination has been made in a final judgment against both Silverman and WPP in the California litigation. That determination is preclusive against Silverman and WPP in this action.

39. Federal Rule 69(a)(1) permits "proceedings supplementary to and in aid of judgment or execution" in accord with the procedure of the state where the Court is located.

40. Section 56.29 of the Florida Statutes permits proceedings supplementary in aid of execution. It allows the judgment creditor to "ferret out what assets the judgment debtor may have or what property of his others may be holding for him, or may have received from him to defeat the collection of the lien claim, that might be subject to the execution." *Young v. McKenzie*, 46 So. 2d 184, 185 (Fla. 1950). This "enables speedy and direct proceedings in the same court in which the judgment was recovered to better afford a judgment creditor the most complete relief possible in satisfying the judgment." *Zureikat v. Shaibani*, 944 So.2d 1019, 1023 (Fla. Dist. Ct. App. 2006) (citation omitted).

41. This law requires the judgment debtor to file a motion and affidavit identifying the unsatisfied judgment and stating that execution is valid and outstanding, "and thereupon the judgment creditor is entitled to these proceedings supplementary to execution." Fla. Stat. § 56.29(1).

42. Subsection (2) of the statute requires a description in the motion or in a supplemental affidavit of property of the judgment debtor that is not exempt from execution and may be applied to satisfy the debt. The Court then issues a Notice to Appear describing with reasonable particularity the property that may be used to

satisfy the judgment, so that the person may have the opportunity to present defenses. Fla. Stat. § 56.29(2).

43. A third party generally may be brought into the case when the judgment creditor alleges the third party holds property that may be used to satisfy the judgment. *Longo v. Associated Limousine Services, Inc.*, 236 So.3d 1115, 1120-21 (Fla. Dist. Ct. App. 2018).

44. Section 56.29(2) applies when the third party is the alter ego of the judgment debtor. *Longo*, 236 So.3d at 1121. Because an alter ego is the same legal person as the judgment debtor, "the description requirement of section 56.29(2) is satisfied if the judgment creditor describes any property of an alter ego of the judgment debtor not exempt from execution in the hands of any person, or any property, debt, or other obligation due to an alter ego of the judgment debtor which may be applied toward satisfaction of the judgment." *Id.*

### E. Section 56.29 Allegations

45. Defendant holds two final judgments entered by this Court in this action against WPP, one entered on June 12, 2020 in the principal amount of $2,672,977.86, bearing interest at .046753%, and one entered October 2, 2020 for attorneys' fees in the amount of $58,573.50, bearing interest at .0328767%. The judgments are not satisfied. Interest accrues on these judgments at the federal post-judgment rate. The per diem interest on the June 12 judgment is $12.45, and the per

diem on the October 2 judgment is $0.19. Interest accrued through January 4, 2021 is $2,564.59 on the June 12 judgment and $18.10 on the October 2 judgment. Execution is valid and outstanding.

46. The total amount due on both judgments as of January 4, 2021 is $2,734,134.06.

47. Defendant alleges and believes Silverman has nonexempt property that may be used to satisfy its judgments, including:

    a. Proceeds of the $3 million that defendant paid WPP in fall 2016, as Silverman acknowledged in his deposition.

    b. Proceeds of the hundreds of millions of dollars of Wolfgang Puck branded products that WPP received under the license agreement, as Silverman acknowledged in his deposition.

    c. At least a life estate interest in real property located at 19577 NE 37 Avenue, Aventura, Florida, more particularly described as Lot 10, Aventura 9th Addition subdivision, according to a Plat recorded in Plat Book 136, Page 86 of the Public Records of Miami-Dade County, Florida. Parcel Identification Number: 28-2202-025-0100. Silverman acquired the property in September 2004 for approximately $1,445,000.

    d. A portion of Tract "EE" of Fifth Addition Biscayne Yacht and Country Club, according to the Plat thereof as recorded in Plat Book 99, at

Page 20, of the Public Records of Miami-Dade County, Florida, also acquired in September 2004. Parcel Identification Number: 28-2202-025-0100.

 e. Debts, receivables and obligations owing to WPP and W.P. Appliances from Home Shopping Network, BJ's Wholesale, TJ Maxx and Ross Stores.

 f. Securities of and proceeds or distributions from W.P. Appliances, Inc.; W.P. Housewares, Inc.; W.P. Licensing, Inc.; Sisco Financial Services, Inc.; Celebrity Apparel Designs; Celebrity Licensing Associates; I.S. Appliances; JR Marketing Sales; Pembroke Distributors; TC Appliances; TL Food; V3 Funding; Versatile Housewares.

 g. Accounts and contracts, owned separately or owned jointly with others, including annuities, securities accounts, bank accounts, debt instruments, promissory notes.

 h. Legal and beneficial title in and to property held in trust by or for the benefit of Silverman.

 i. Personal property including jewelry, art, furnishings, vehicles, watercraft, and the like.

 j. Defendant has and reserves the right to supplement this listing and the accompanying affidavit under Section 56.29(2), Fla. Stat., after an opportunity to have additional discovery.

48. Defendant respectfully requests that this Court direct Silverman to complete and return to defendant a Form 1.977, Fact Information Sheet, under oath, within 20 days of the Court's ruling.

49. To the extent necessary, defendant respectfully requests that Silverman be added as a judgment debtor under the defendant's judgments as WPP's alter ego. Defendant has served this motion and its supporting papers personally on Silverman by FedEx, in addition to the ECF service that goes to WPP's counsel. As noted, Silverman and WPP are the same legal person as alter egos.

50. This motion is supported by the accompanying Affidavit of Jess Askew III and a brief.

51. Pursuant to Local Rule 7.1(a)(3), counsel for Sam's Club has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues raised in this motion, including by letter dated February 3, 2021, multiple emails, and by telephone on March 1, 2021, but the parties have been unable to reach a resolution.

WHEREFORE, Sam's Club respectfully requests the following specific relief:

1. Rule 41(a) dismissal of the remaining counterclaim without prejudice.

2. Grant of Rule 69 proceedings supplementary.

3. Execution against Sydney I. Silverman as WPP's alter ego based on collateral estoppel,

4. Addition of Sydney I. Silverman as a judgment debtor to the existing judgments under Fed. R. Civ. P. 58.

5. Issuance of Notice to Appear to Sydney I. Silverman under Fla. Stat. § 56.29 to file an affidavit within 20 days stating why the following property should not be applied to satisfy the judgments:

   a. Proceeds of the $3 million that defendant paid WPP in fall 2016, as Silverman acknowledged in his deposition.

   b. Proceeds of the hundreds of millions of dollars of Wolfgang Puck branded products that WPP received under the license agreement, as Silverman acknowledged in his deposition.

   c. At least a life estate interest in real property located at 19577 NE 37 Avenue, Aventura, Florida, more particularly described as Lot 10, Aventura 9th Addition subdivision, according to a Plat recorded in Plat Book 136, Page 86 of the Public Records of Miami-Dade County, Florida. Parcel Identification Number: 28-2202-025-0100. Silverman acquired the property in September 2004 for approximately $1,445,000.

   d. A portion of Tract "EE" of Fifth Addition Biscayne Yacht and Country Club, according to the Plat thereof as recorded in Plat Book 99, at

Page 20, of the Public Records of Miami-Dade County, Florida, also acquired in September 2004. Parcel Identification Number: 28-2202-025-0100.

  e. Debts, receivables and obligations owing to WPP and W.P. Appliances from Home Shopping Network, BJ's Wholesale, TJ Maxx and Ross Stores.

  f. Securities of and proceeds or distributions from W.P. Appliances, Inc.; W.P. Housewares, Inc.; W.P. Licensing, Inc.; Sisco Financial Services, Inc.; Celebrity Apparel Designs; Celebrity Licensing Associates; I.S. Appliances; JR Marketing Sales; Pembroke Distributors; TC Appliances; TL Food; V3 Funding; Versatile Housewares.

  g. Accounts and contracts, owned separately or owned jointly with others, including annuities, securities accounts, bank accounts, debt instruments, promissory notes.

  h. Legal and beneficial title in and to property held in trust by or for the benefit of Silverman.

  i. Personal property including jewelry, art, furnishings, vehicles, watercraft, and the like.

6. Order to Sydney I. Silverman to submit Florida Form 1.977, Fact Information Sheet, under oath, within 20 days.

7. Grant all other just and proper relief in the circumstances.

Respectfully submitted,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

David Tarlow
Florida Bar No. 893684
One East Broward Blvd., Suite 1200
Ft. Lauderdale, Florida 33301
(954) 523-7008
(954) 523-7009 Fax
dtarlow@qpwblaw.com

and

**KUTAK ROCK LLP**

Jess Askew III (admitted *pro hac vice*)
124 W. Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201
(501) 975-3000
(501) 975-3001 Fax
jess.askew@kutakrock.com

Andrew Tarvin (admitted *pro hac vice*)

234 E. Millsap Road, Suite 200
Fayetteville, Arkansas 72703
(479) 973-4200
(479) 973-0007 Fax
andrew.tarvin@kutakrock.com

**ATTORNEYS FOR SAM'S WEST, INC.**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 22, 2021, a copy of the foregoing was served on the following counsel via Federal Express system:

Sydney I. Silverman
19577 NE 37 Avenue
Aventura, Florida 33180

                                          Jess Askew III
                                          _____
                                          Jess Askew III