**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

W.P. PRODUCTIONS, INC.                                              PLAINTIFF

      v.                              Case No. 18-CV-63162-JIC

TRAMONTINA U.S.A., INC.,
and SAM'S WEST, INC.                                               DEFENDANTS

---

SAM'S WEST, INC.                                          THIRD-PARTY PLAINTIFF

      v.

SYDNEY I. SILVERMAN                                  THIRD-PARTY DEFENDANT

<u>**AMENDED SUPPLEMENTAL COMPLAINT**</u>

Defendant/Counterclaimant/Third-Party Plaintiff Sam's West, Inc. ("Sam's Club"), for its

Amended Supplemental Complaint against Sydney I. Silverman ("Silverman"), states:

1.      Sam's Club is an Arkansas corporation with its principal place of business in

Bentonville, Arkansas.

2.      W.P. Productions, Inc. ("WPP") is a Florida corporation with its principal place of

business in Hollywood, Florida.

3.      Silverman is an individual and citizen of the State of Florida.

4.      This action arises out of the transactions and occurrences alleged in WPP's

complaint and Sam's Club's counterclaim in this actioen, and is brought in connection with

proceedings supplementary to collect judgments in Sam's Club's favor entered herein pursuant to

Federal Rule of Civil Procedure 69 and Section 56.29 of the Florida Statutes, as set forth in the

Court's Order at Doc. 138.

5.      Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over this action

by reason of diversity of citizenship, in that it is a civil action wherein the amount in controversy

exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.  This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 because the claims raised herein are so related to the claims in the underlying lawsuit that they form part of the same case or controversy.

### Introduction and Background

6.      In the last couple of years, WPP and Silverman have litigated with Wolfgang Puck and Barbara Lazaroff, the licensors of the Wolfgang Puck brand (the "License Claims"), and with Sam's Club involving sales of Wolfgang Puck-branded product.

7.      The License Claims involved WPP's failure to pay required royalties, and the Sam's Club claims involved WPP's failure to pay admitted amounts due on account.

8.      Puck and Lazaroff took their matter to arbitration and obtained a judgment in California for $2.5 million, and then they obtained a judicial determination that Silverman was liable on the arbitration judgment as WPP's alter ego.

9.      Puck and Lazaroff pursued collection against Silverman in Broward County Circuit Court, and, on the eve of his deposition in this lawsuit, Silverman personally paid the $2.5 million judgment to avoid a contempt finding in Broward County for failure to disclose his assets.

10.      In this case, WPP took the offensive, suing Sam's Club and Tramontina USA, Inc. on business-tort theories based on supposed interference with sales of Wolfgang Puck branded products, claiming more than $15 million in lost business.

11.      Yet WPP concealed the facts that it had lost its license for the brand eight months before it sued Sam's Club and had been in breach of the Sam's Club contract for refusing to pay royalties for more than two years—WPP had no right to sell the very products at the center of its lawsuit against Sam's Club. Silverman had even shut down WPP's business as part of the run-up

to this lawsuit. WPP failed to participate meaningfully in discovery and withdrew its claims against Sam's Club rather than oppose summary judgment.

12.      This Court entered two final judgments in Sam's Club's favor against WPP on June 12, 2020 and October 2, 2020, respectively. The June judgment is in the principal amount of $2,672,977.86 on Sam's Club's counterclaim, and the October judgment is for attorneys' fees in the amount of $58,573.50. The judgments are not satisfied.

13.      Puck and Lazaroff unmasked Silverman as WPP's alter ego and overcame Silverman's effort to avoid paying the royalty judgment. Sam's Club seeks to use that determination to same effect in this litigation.

**A.      The alter ego determination.**

14.      WPP's business with Sam's Club involved sales of Wolfgang Puck-branded kitchen products under a vendor agreement.

15.      WPP received the right to use Wolfgang Puck's brand and name in selling the cookware under a License Agreement originally granted by Wolfgang Puck and Barbara Lazaroff on January 5, 1995 and amended over the years (the "License Agreement").

16.      WPP sold hundreds of millions of dollars in Wolfgang Puck products under the License Agreement through various sales channels, including Sam's Club as well as Home Shopping Network.

17.      WPP owed royalties under its License Agreement, and in 2017 the licensors initiated an arbitration against WPP and its affiliate, W.P. Appliances, Inc., ("WPA") for underpayment of royalties and overstatement of deductions during the period 2011 through 2015. The arbitration resulted in an award against WPP in the amount of $2,430,850.89.

18.     The licensors obtained a judgment confirming the arbitration award in *Wolfgang Puck and Barbara Lazaroff v. W.P. Productions and W.P. Appliances, Inc.*, Los Angeles, California Superior Court Case No. BS173923, on July 25, 2018.

19.     The licensors moved to amend the arbitration judgment to include Silverman individually as the alter ego of WPP and WPA on October 17, 2018.

20.     Silverman personally appeared and removed the California Superior Court action to the U.S. District Court for the Central District of California, where it was assigned Case No. 2:18-cv-9708-JAK-SS. The district court remanded the case back to state court for lack of federal jurisdiction on March 4, 2019.

21.     By Minute Order and Second Amended Judgment entered on May 17, 2019, the California Superior Court determined Silverman is the alter ego of WPP and WPA.[1]

22.     Silverman appeared in the California state court through his counsel and actually contested the alter ego motion.

23.     Puck and Lazaroff presented evidence in the California case that in the last six months of 2018:

       a.     Silverman commingled his personal funds with WPP's.

       b.     Silverman failed to segregate funds among WPP and WPA, together with another wholly owned entity, Sisco Financial Services, Inc.

       c.     There were numerous transfers among Silverman and these three entities.

       d.     Silverman made all strategic decisions for the entities and threatened to shut down WPP and WPA if Puck and Lazaroff tried to collect the arbitration judgment.

       e.     WPP paid personal credit-card expenses of Silverman.

---

[1] A true and correct copy of the Minute Order and Second Amended Judgment is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

      f.     WPP and WPA diverted revenues to avoid paying the arbitration judgment.

      g.     Silverman referred to the License Agreement and the debts of WPP as his own.

24.    The Superior Court found that it had personal jurisdiction over Silverman in connection with the arbitration judgment.

25.    Based on the evidence and argument at the hearing, the Superior Court found Silverman is WPP's alter ego because Silverman (1) treated the assets of WPP as his own; (2) was reimbursed for credit card charges from company funds; (3) referred to WPP's License Agreement as being his; (4) referred to WPP's debts as being his own; (5) commingled his own funds in to the accounts of WPP; and (6) threatened to close WPP if pressed to pay a judgment.[2]

26.    The Superior Court amended the arbitration judgment to include Silverman as a judgment debtor.

27.    Silverman filed a notice of appeal of the alter ego ruling and the Second Amended Judgment in California on July 18, 2019.

28.    Silverman satisfied the arbitration judgment during collection proceedings in the state courts of Florida about 90 days after he filed the California appeal. He defaulted in prosecuting the California appeal, and the California Court of Appeal dismissed his appeal on January 16, 2020.

29.    Silverman appeared and defended the alter ego motion in California, appealed the adverse ruling, and failed to carry out his appeal. The alter ego ruling in the Second Amended Judgment is a full and final judgment against Silverman and WPP.

---

[2] Exhibit A, at pages 9-10.

**B.      The WPP arbitration judgment was paid in Florida by Silverman.**

30.      Puck and Lazaroff recorded the arbitration judgment in Broward County and began collection efforts in Broward County, Florida Case No. CACE18028450.

31.      As a judgment debtor, Silverman was required to complete Form 1.977, Fact Information Sheet, under oath. He failed to do so, and on September 10, 2019, the Broward County Circuit Court compelled him to complete that form within 20 days.

32.      Silverman refused to comply with the court order, and on October 2, 2019, Puck and Lazaroff moved to find Silverman in contempt of court.

33.      On October 24, 2019, the Broward County Circuit Court entered an order holding the contempt motion under advisement and allowing Silverman to avoid having to comply with the September 10 order if Silverman paid the net amount of the arbitration judgment that remained unpaid within one week.

34.      Silverman immediately paid the arbitration judgment. He testified in this underlying action that he lent the money to pay the judgment to WPP, one of the three judgment debtors.

35.      When he arranged to pay the arbitration judgment, WPP was no longer in business, and Silverman testified he had no idea how he would be repaid.

36.      At some point during the Florida collection process, Silverman filed a notice of appeal from a ruling of the Broward County Circuit Court to the Florida District Court of Appeal, Case No. 4D19-2719. He dismissed that appeal on November 4, 2019.

**C.      Silverman's efforts to impede collection against WPP.**

37.      In addition to the $2.7 million that WPP owes Sam's Club from this case, WPP also has an unsatisfied judgment from a Chinese manufacturing vendor, Shanghai Kingbow, for more

than $200,000. Silverman testified that the Kingbow judgment was due to nonpayment by WPP. He admitted WPP did not have the money to pay the judgment. This testimony came within a month after Silverman claims he lent WPP $2.5 million to pay the arbitration judgment, on which he was personally liable.

38.     Silverman testified in November 2019 that WPP did not have the money to pay WPP's debts to Sam's Club that are now included in the judgments from this Court.

39.     Yet in July 2016, Silverman testified, when Puck and Lazaroff initially presented the license audit and demanded $795,000 in unpaid royalties, WPP could have written a check in that amount to resolve the matter and maintain its Wolfgang Puck license.

40.     Silverman testified that the decision whether to pay or not pay based on the royalty audit "was my decision," and the only reason he decided to resist was he thought the audit was wrong.[3]

41.     By refusing to pay or resolve this license issue in 2016, Silverman charted a course that resulted in WPP's admitted current insolvency.

42.     After obtaining their arbitration award in early 2018, Puck and Lazaroff terminated WPP's license for the Wolfgang Puck brand. This eliminated WPP's ability to sell Wolfgang Puck branded items at all.

43.     At roughly the same time as the Puck and Lazaroff royalty audit was underway, WPP began to default on payments owed on account to Sam's Club, leading to Sam's Club's counterclaims and judgments. WPP signed the Claim Installment Payment Agreement with Sam's

---

[3] Exhibit B, excerpts from deposition transcript of Sydney I. Silverman, at page 161, line 14 – page 162, line 24.

Club on April 21, 2016 and made its last payment under that note in September 2016. WPP's failure to pay the 2016 ISB debt was also ripening at about the same time.

44.     Yet Sam's Club paid WPP $3 million for other Wolfgang Puck product in fall 2016. Silverman could not explain why WPP did not use some of that money to pay the Sam's Club's note.

45.     Silverman explained that 60% of WPP's total Wolfgang Puck kitchenware sales were on Home Shopping Network, 30% were to Sam's Club, and the remaining 10% were to others.[4] Over the life of the License Agreement, Silverman testified that he paid $48 million in royalties to Puck and Lazaroff.[5] At a royalty rate ranging from 7% for sales to Sam's Club to almost 9% for certain sales on Home Shopping Network, the $48 million in royalties implies well more than half a billion dollars in sales of licensed products over the years. Silverman agreed it was possible the sales could have been $900 million or more.[6]

46.     After Puck and Lazaroff terminated the License Agreement, Silverman kept WPP alive as a legal entity even though he shut down its operations. His movements of funds in and out of WPP and its related Wolfgang Puck business entities to facilitate this shutdown are partially captured in the findings of the Superior Court of Los Angeles County.[7]

47.     By letter dated October 9, 2017, Sam's Club made written demand on WPP for payment of certain amounts due and owing.  On October 11, 2017, Puck and Lazaroff initiated arbitration proceedings against WPP with respect to royalties due under the License Agreement.

---

[4] *Id.*, at page 169, lines 8-15.
[5] *Id.*, at page 161, lines 18-21.
[6] *Id.*, at pages 186-87.
[7] Exhibit A, at page 8.

48.     In November of 2017, Silverman caused a quitclaim deed to be filed in Miami-Dade County transferring ownership of residential property located in Aventura, Florida from Silverman and his wife, jointly, to Silverman for a life estate with the remainder to his wife.

49.     Though he shut down operations at WPP, Silverman engineered this lawsuit, which was filed in the last week of 2018, after Puck and Lazaroff had moved to include him on the arbitration judgment as WPP's alter ego.

50.     In its pleadings in this case, WPP concealed its loss of the license and the obvious impossibility of future sales of the branded product. Notwithstanding this, WPP sought damages for loss of future sales of the Wolfgang Puck product, and left it for Sam's Club to uncover in discovery WPP's previous loss of the license and cessation of business operations.

51.     Sam's Club requested in discovery WPP's business records and tax returns that would show the sources and uses of funds throughout the relevant period from 2016 through 2018. WPP never produced this information before entry of the judgments.

### Causes of Action

### Count I:  Declaratory Judgment (Collateral Estoppel – Alter Ego)

52.     Sam's Club incorporates the preceding allegations 1 through 51 by reference as if fully set forth herein.

53.     Sam's Club seeks a declaration pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 that Silverman is WPP's alter ego, as Sam's Club seeks to execute and collect the judgments in this action directly against Silverman as WPP's alter ego.

54.     Whether Silverman is WPP's alter ego is a controversy affecting the legal relations of the parties, and a declaration that Silverman is WPP's alter ego clarifies the parties' legal relations.

55.     The alter ego determination has already been made in a final judgment against both Silverman and WPP in the California litigation. That determination is preclusive against Silverman and WPP in this action.

56.     California law determines the preclusive effect of the California judgment.[8]

57.     Under California common law,

> an earlier ruling will be given preclusive effect if (1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party in privity with a party to the prior proceeding.[9]

58.     In California, "[t]he 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."[10]

59.     The facts in this case concern Silverman's misuse of WPP's corporate form and are exactly the same as those relied upon to support the California Superior Court's alter ego determination.

60.     Collateral estoppel applies here to preclude Silverman from denying he is WPP's alter ego because: (1) the alter ego issue was decided in May 2019 by the Los Angeles County Superior Court; (2) the alter ego determination was necessary to add Silverman as a judgment debtor in the second amended final judgment issued by that Court; (3) Silverman appeared, removed the case, and contested and appealed the issue.

---

[8] *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) (citation omitted).
[9] *Conservatorship of Buchenau*, 196 Cal. App. 4th 1031, 1040, 127 Cal. Rptr. 3d 109, 116 (2011) (internal quotations omitted).
[10] *Lucido v. Superior Court*, 51 Cal.3d 355, 342, 795 P.2d 1223, 1225 (Cal. 1990); *see also Diocese of San Joaquin v. Gunner*, 246 Cal.App.4th 254, 266 (Cal. Ct. App. 2016).

61.     Silverman's legal status as WPP's alter ego was in fact litigated and was necessary to the determination in California.

62.     Accordingly, the California alter ego determination is entitled to preclusive effect, and Sam's Club respectfully requests that Silverman be added as a judgment debtor under Sam's Club's judgments in this action as WPP's alter ego.

### Count II:  Declaratory Judgment (Alter Ego)

63.     Sam's Club incorporates the preceding allegations 1 through 62 by reference as if fully set forth herein.

64.     Silverman dominated and controlled WPP to the extent that he is WPP's alter ego.

65.     Silverman used WPP fraudulently and for an improper purpose to the extent WPP was a mere instrumentality for the transaction of Silverman's personal affairs.

66.     Silverman is the alter ego of WPP because, in addition to the facts incorporated by reference:

a.     Silverman treated the assets of WPP as his own.

b.     Silverman commingled his personal funds with WPP's.

c.     Silverman failed to segregate funds among WPP and WPA, together with another wholly owned entity, Sisco Financial Services, Inc.

d.     There were numerous transfers among Silverman and these three entities.

e.     Silverman made all strategic decisions for WPP.

f.     Silverman used WPP to frustrate WPP's creditors, including but not limited to Sam's Club.

g.     Silverman caused WPP to file this lawsuit after learning that he was being pursued personally for liability on the $2.5 million arbitration judgment against WPP. All actions by WPP in this lawsuit were designed to benefit Silverman personally.

h.     Silverman used WPP offensively in this lawsuit after shutting down its operations and rendering it unable to pay the judgments entered against it.

i.   After rendering WPP insolvent, Silverman caused WPP to prosecute claims against Sam's Club and Tramontina USA, Inc.

j.   Silverman caused WPP to prosecute its claims and to seek future lost profits based on the false premise that WPP still had the right to sell the licensed products involved in this case. Silverman and WPP concealed this fact in WPP's complaint filed in this case and until discovery in the case.

k.   Given WPP's insolvency, lack of business operations and lack of license at the time this lawsuit was filed, Silverman used WPP as a tool to gain leverage against Sam's Club in this lawsuit for his personal benefit in the event of recovery, and to frustrate Sam's Club's collection of the WPP debts that WPP ultimately conceded were just, valid and overdue.

l.   On information and belief, Silverman personally paid all legal expenses and fees of WPP in this action.

m.   Silverman threatened to, and eventually did, shut down WPP and WPA when Puck and Lazaroff tried to collect the arbitration judgment.

n.   Silverman referred to WPP's License Agreement as being his own.

o.   WPP paid personal credit-card expenses of Silverman.

p.   WPP and WPA diverted revenues to avoid paying the arbitration judgment and other creditors, including Sam's Club.

q.   Silverman was the sole shareholder, president, and the agent for service of process for WPP.

r.   After WPP's insolvency, Silverman paid $2.5 million to satisfy the arbitration judgment, on which he was personally liable.

s.   Silverman and WPP have engaged the same attorney to represent them in this matter.

67.   Sam's Club respectfully requests that Silverman be added as a judgment debtor under Sam's Club's judgments in this action as WPP's alter ego.

WHEREFORE, Sam's Club respectfully requests the following specific relief:

1.   A declaration that Sydney I. Silverman is WPP's alter ego;

2.   Addition of Sydney I. Silverman as a judgment debtor to the existing judgments under Fed. R. Civ. P. 58;

3.  Order to Sydney I. Silverman to submit Florida Form 1.977, Fact Information Sheet, under oath, within 20 days; and

4.  All other just and proper relief in the circumstances.

Respectfully submitted,

**KUTAK ROCK LLP**

Jess Askew III (admitted *pro hac vice*)
124 W. Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201
(501) 975-3000
(501) 975-3001 Fax
jess.askew@kutakrock.com

Andrew Tarvin (admitted *pro hac vice*)
5111 W. JB Hunt Drive, Suite 300
Rogers, Arkansas 72758
(479) 250-9700
(479) 973-0007 Fax
andrew.tarvin@kutakrock.com

Caleb S. Sugg, Florida Bar No. 1010882
234 East Millsap Road, Suite 200
Fayetteville, Arkansas 72703-4099
(479) 973-4200
(479) 973-0007 Fax
caleb.sugg@kutakrock.com

and

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

David Tarlow
Florida Bar No. 893684
One East Broward Blvd., Suite 1200
Ft. Lauderdale, Florida 33301
(954) 523-7008
(954) 523-7009 Fax
dtarlow@qpwblaw.com

**ATTORNEYS FOR SAM'S WEST, INC.**