UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-63162-COHN/STRAUSS

**W.P. PRODUCTIONS, INC.,**

    Plaintiff,

v.

**TRAMONTINA U.S.A., INC.,** *et al.***,**

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Sam's West, Inc.'s Motion for Summary Judgment ("Motion") [DE 149].[1] All post-judgment matters have been referred to me – for appropriate disposition, evidentiary hearing, and/or report and recommendation – pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida [DE 128]. I have reviewed the Motion, the briefing and statements related thereto [DE 150, 152, 157, 158, 166, 169], all other summary judgment materials, and the record in this case. I also held a hearing on the Motion on October 14, 2021. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 149] be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Judgment Creditor, Sam's West, Inc. ("Judgment Creditor") holds two judgments [DE 105, 120] against Judgment Debtor, W.P. Productions, Inc. ("Judgment Debtor"), the first for

---

[1] "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "All evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party." *Id.* (citations omitted).

$2,672,977.86, and the second for $58,573.50. Unable to satisfy those judgments against Judgment Debtor, Judgment Creditor commenced proceedings supplementary pursuant to section 56.29 of the Florida Statutes. *See* [DE 123, 138]. In its Amended Complaint [DE 148] in the current proceedings supplementary, Judgment Creditor seeks to have the Court pierce the corporate veil against Sydney Silverman ("Silverman"), the sole shareholder of Judgment Debtor, and thus, add Silverman as a judgment debtor to the two judgments against Judgment Debtor [DE 105, 120]. Although the Amended Complaint contains two declaratory judgment counts, they effectively seek the same relief. Both counts simply attempt to obtain that relief through different vehicles. The sole material difference is that in Count I, Judgment Creditor asserts that the Court should pierce the corporate veil *based upon collateral estoppel (issue preclusion)*.[2] In other words, Judgment Creditor contends that determinations made by a California court in a prior proceeding (discussed below) should be given preclusive effect and that, once given preclusive effect, those determinations establish Judgment Creditor's veil-piercing claim in this case. However, if Judgment Creditor is unable to establish that collateral estoppel is sufficient on its own to pierce the corporate veil and add Silverman to the judgments in this case, then Judgment Creditor will attempt to otherwise establish through this litigation (after discovery) that the corporate veil should be pierced as to Silverman.

      Given the contention in this case that collateral estoppel may allow Judgment Creditor to prevail without the need to conduct discovery or litigate other matters, I decided it would be prudent to consider the collateral estoppel issue before proceeding with discovery and other litigation in this case. Such discovery and litigation would be unnecessary if collateral estoppel

---

[2] The terms "collateral estoppel" and "issue preclusion" will be used interchangeably in this Report.

applies to all of the issues in this case.[3]  Therefore, following a July 2, 2021 status conference, I directed the parties to file any motions for summary judgment regarding the application of collateral estoppel by August 2, 2021 [DE 146].  Accordingly, Judgment Creditor filed the instant Motion.

Judgment Creditor's collateral estoppel argument is premised on a California judgment entered in a proceeding to which Judgment Debtor and Silverman were parties.  Judgment Creditor was not a party to that proceeding.  In the California proceeding, two individuals ("CA Creditors"), who are not parties to this case, obtained an arbitration award against Judgment Debtor (and another entity) in May 2018.  Statement of Undisputed Material Facts ("SMF") [DE 152] ¶ 17.[4]  *See also* Final Award [DE 152-7] at 107-18.  That award was then confirmed by a California court in July 2018, which entered a judgment consistent with the award.  SMF ¶ 18; Judgment [DE 152-7] at 120-21.  In October 2018, the CA Creditors moved to amend the judgment to include Silverman as a judgment debtor on the basis that he was the alter ego of Judgment Debtor (as well as the alter ego of the second judgment debtor from the California arbitration).  SMF ¶ 20.  That request was ultimately granted.  Specifically, on May 17, 2019, the California court entered a Second Amended Judgment adding Silverman as a judgment debtor, as well as a Minute Order explaining its ruling.  *See id.* ¶ 24; Minute Order [DE 152-9] at 4-11.

---

[3] *See Wabakken v. Cal Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015) ("The doctrine of collateral estoppel, or issue preclusion, is grounded on the premise that once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed." (internal quotation marks and citation omitted)).

[4] Silverman has admitted all statements in the SMF.  *See* [DE 157-1].  His Response to Statement of Alleged Undisputed Material Facts includes some brief comments in response to certain statements (mainly that some statements are immaterial, which is true).  Nonetheless, he has not disputed any statements or provided any additional facts.

3

In the Minute Order, the California court found that Silverman is Judgment Debtor's alter ego. [DE 152-9] at 6. In determining whether to add Silverman to the judgment, the California court considered whether to "disregard[] the corporate entity [Judgment Debtor] under the alter ego doctrine." *Id.* It noted the two elements that must be established to do so under California law: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* (citation omitted). It further noted that various factors are considered to determine whether there is a unity of interest. Those factors are:

> (1) commingling of funds; (2) failure to segregate funds of separate entities; (3) sole ownership of all of the stock in a corporation by one individual; (4) the treatment by an individual of the assets of the corporation as his or her own; (5) the use of the same office or business location; (6) the employment of the same employees and/or attorney; (7) the diversion of assets from a corporation by a stockholder to the detriment of creditors; and (8) the use of a single address for the individual and the corporation.

*Id.* at 6-7 (citation omitted). However, the California court stated that the foregoing factors are non-exhaustive and no single factor is determinative. *Id.* at 7 (citation omitted).

As an initial matter, by virtue of its alter ego determination, the California court found "such unity of interest and ownership that the separate personalities of [Judgment Debtor] and [Silverman] no longer exist" and "if the acts [were] treated as those of the corporation alone, an inequitable result [would] follow." It also made the following findings: (1) "[t]here is evidence that Silverman treats the assets of [Judgment Debtor] as his own"; (2) "Silverman was reimbursed for credit card charges from company funds"; (3) "Silverman has referred to the licensing agreement [between Judgment Debtor and the CA Creditors] as being his"; (4) "Silverman has acknowledged [Judgment Debtor's] debts as being his own"; (5) "Silverman has commingled his own funds into the accounts of [Judgment Debtor]"; (6) "Silverman has also threatened to close

4

Judgment Debtor if pressed to pay the judgment" (in the California matter); and (7) "there is sufficient evidence of bad faith that would make it inequitable to not add Silverman as a judgment debtor."[5]  *Id.* at 8-9.  *See also* SMF ¶ 26.  The finding of bad faith was premised upon Judgment Debtor and/or the other judgment debtor in the California action receiving approximately $26,000 and not setting that money aside to pay the judgment in the California action.  [DE 152-9] at 9.  The $26,000 may have been funds received from the sale of Wolfgang Puck products, and an order was in place to prevent the disposal or spending of funds received from the sale of such products.  *Id.*  Nonetheless, around the same time, Silverman was reimbursed for more than $30,000 in credit card charges.  *Id.*

## ANALYSIS

I respectfully recommend that this Court find that collateral estoppel (issue preclusion) precludes Silverman from contesting only one of the three elements that must be proven to pierce the corporate veil in this case.  Because Judgment Creditor seeks to apply collateral estoppel based upon a California state court judgment, California's collateral estoppel law applies.  *See In re St. Laurent*, 991 F.2d 672, 675-76 (11th Cir. 1993) ("If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect."); *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) ("[A] federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law." (quoting *McInnes v. California*, 943 F.2d 1088, 1092-93 (9th Cir. 1991))).

---

[5] These nine findings – as to the two elements and items (1) through (7) – may hereinafter be collectively referred to as the "California Court's Determinations."

Under California law, collateral estoppel "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." *Hardwick*, 980 F.3d at 740 (quoting *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015)). It "prevents a party from obtaining a second adjudication of an issue that has already been adjudicated against that party on the merits by a court of competent jurisdiction." *Id.* (quoting *Pajaro Valley Water Mgmt. Agency v. McGrath*, 27 Cal. Rptr. 3d 741, 745 (Cal. Ct. App. 2005)). Collateral estoppel applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Id.* (quoting *DKN Holdings*, 352 P.3d at 387). The party seeking to invoke collateral estoppel has the burden of establishing that the foregoing elements are satisfied. *Id.* (citing *Lucido v. Superior Ct.*, 795 P.2d 1223, 1225 (Cal. 1990)).

The crux of the dispute in this case concerns the "identical issue" element. It is undisputed that the California judgment at issue is the result of a final adjudication, and it is undisputed that Silverman was a party to the California case. Silverman also does not dispute that the California court found him to be the alter ego of Judgment Debtor under California law or that Silverman's alter ego liability under California law was actually litigated.

As to identity of issues, in the memorandum submitted with its Motion, Judgment Creditor argued that the alter ego issue in this case is identical to the issue decided in the California case. [DE 150] at 4. But Judgment Creditor's memorandum seems to oversimplify the issue by contending that simply because the California court found Silverman to be Judgment Debtor's alter ego at a time while the instant case was pending, this Court must pierce the corporate veil in this case. Adopting such an approach, however, would elevate form and labels over substance. By way of analogy, as many cases in the bankruptcy context demonstrate, simply because a state

6

court finds an individual to be liable for "fraud" under state law does not *automatically* mean that the individual has committed actual fraud in the bankruptcy non-dischargeabilty context.[6] *See, e.g.*, *In re Harris*, 3 F. 4th 1339, 1347-51 (11th Cir. 2021). Rather, even if the issues have identical labels, it is necessary to consider whether the elements in both cases are the same (i.e., whether the same rule of law is involved). *See id.* at 1347 ("We first consider whether the elements of Mr. Jayo's fraud-based claims are identical to the elements of fraud under § 523(a)(2)(A). In other words, we ask whether the nondischargeability proceeding 'involve[s] application of the same rule of law as that involved in the prior proceeding.'" (citation omitted)); *In re Hai Lecong*, 679 F. App'x 526, 528-29 (9th Cir. 2017) (comparing fraud elements under California law and under section 523(a)(2)(A) of the Bankruptcy Code).

Here, as Silverman recognized in his response, Florida law supplies the elements for Judgment Creditor's veil-piercing claim, whereas the California court applied California law to determine Silverman's alter ego liability in the California case.[7] Florida law applies in this case because this Court is sitting in diversity and Judgment Debtor is a Florida corporation. *See ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281, 1298 n.3 (S.D. Fla. 2021) ("[G]enerally the law of the state of incorporation or formation applies when determining alter ego liability."); *Upfitters, L.L.C. v. Brooking*, No. 3:18-CV-496-J-34PDB, 2020 WL 954984, at *5 n.5 (M.D. Fla. Feb. 27, 2020) ("Under Florida's choice-of-law rules, the law of the state of formation

---

[6] The Bankruptcy Code excepts from a bankruptcy debtor's discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A).

[7] Notwithstanding the different nomenclature, the California court's finding of alter ego *liability* was the functional equivalent of piercing the corporate veil. While "alter ego" itself is only encompassed in the first Florida veil-piercing element and is not synonymous with veil-piercing, *see Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 5795187, at *8 (S.D. Fla. Oct. 2, 2014), "alter ego *liability*" is synonymous with veil piercing in that they have the same ultimate effect.

applies in determining whether an entity's liability shield is pierced." (citations omitted)). Both parties have now acknowledged that veil-piercing/alter ego liability is generally determined based on a company's state of incorporation. *See* [DE 157] at 6; [DE 166] at 8. Recognizing this, Judgment Creditor now argues (in its supplemental brief) that even though the California court applied California law, Silverman would have been entitled to the application of Florida law in the California case if he had raised the issue (given that Florida law generally governs requests to pierce the corporate veil against Florida entities). However, Judgment Creditor failed to make this argument in the Motion. Moreover, in making this argument in its supplemental brief, Judgment Creditor provides no case law to support its contention that Silverman cannot argue Florida law applies here simply because he apparently did not argue that Florida law should have applied in the California action when it should have.

Simply stated, the California court applied a different rule of law than the rule of law that must be applied here, which means that the *ultimate* veil-piercing and alter ego liability determinations are not automatically identical. *See Hardwick*, 980 F.3d at 740 ("The identical issue requirement addresses whether identical factual allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (internal quotation marks and citations omitted)). Although there is overlap in the factual allegations, as discussed above, the Court must still compare the elements considered in the California case and the Florida elements that apply here. *See In re Harris*, 3 F. 4th at 1347; *In re Hai Lecong*, 679 F. App'x at 528-29. Again, the California court applied the following elements (based on California law): "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." [DE 152-9] at 6. However,

> It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that:
>
> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).[8] As Silverman correctly indicates, Florida's veil-piercing requirements are more stringent than California's requirements. *See Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, No. 5:03-CV-354-OC-10GRJ, 2009 WL 462721, at *2 & n.2 (M.D. Fla. Feb. 23, 2009) (comparing veil-piercing requirements under Florida and California law and recognizing that Florida's requirements are more onerous).

Accordingly, the question becomes whether what was actually or necessarily determined in the California case satisfies the three (or any of the three) Florida law elements. "If anything is left to conjecture as to what was necessarily involved and decided there can be no collateral estoppel . . . . [I]t must appear . . . that the precise question was raised and determined in the former suit." *Hardwick*, 980 F.3d at 742 (quoting *Shopoff & Cavallo LLP v. Hyon*, 85 Cal. Rptr. 3d 268, 294 (Cal. Ct. App. 2008)).

---

[8] Several cases refer to these three elements as "factors" rather than "elements." However, even cases referring to them as "factors" make clear that all three requirements need to be satisfied to pierce the corporate veil under Florida law. *See, e.g.*, *Gasparini*, 972 So. 2d at 1055 ("three factors must be proven").

9

### A. First Florida Element – Domination and Control/No Independent Existence

The California Court's Determinations are sufficient to establish this first element. As an initial matter, the California court clearly found that Judgment Debtor is an alter ego of Silverman, the company's sole shareholder. [DE 152-9] at 6-7. This, of course, is not enough on its own under Florida law to satisfy the first element because "[e]ven when a corporation is an alter ego of a sole or dominant shareholder . . . 'the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained.'" *BEO Mgmt. Corp. v. Horta*, 314 So. 3d 434, 437 (Fla. 3d DCA 2020) (quoting *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000)). Nonetheless, the California court answered this precise question regarding whether Judgment Debtor's separate identity was lawfully maintained. That is because the first element the California court addressed, and found existed, required determining "that the separate personalities of the corporation and the individual no longer exist." [DE 152-9] at 6.

In his supplemental brief, Silverman acknowledges that the California Court's Determinations "may come close" to establishing the first veil-piercing element under Florida law, *see* [DE 169] at 7, but he nevertheless insists that there are differences between that element and the first element under California law. Although the supplemental brief seems to conflate the analysis regarding the three elements under Florida law – bouncing back and forth between elements rather than separately analyzing each element – Silverman's primary argument appears to be that California's first element is determined based on the eight factors discussed in the Minute Order (and reflected above), whereas Silverman contends that Florida's first element is determined based on fifteen factors. Consequently, he argues that the California court did not consider approximately 47% (7 out of 15) of the relevant factors under Florida law.

Although Silverman's mathematical calculation is accurate, his argument is flawed in several respects. First, the case on which Silverman relies to point out the fifteen factors relies on federal law (from other states) in noting that the factors have been deemed relevant to whether a corporate entity should be disregarded.[9] Notably, aside from the one Florida case cited by Silverman, it does not appear that any other Florida appellate court (or the Florida Supreme Court) has listed or relied upon the same fifteen factors. Second, the factors appear to be relevant to liability as a whole, not solely to the first element under Florida law. In fact, the case that *Hilton Oil* pulled the first ten factors from indicates that the "factors are relevant in determining whether to pierce a corporate veil." *M. Prusman, Ltd. v. Ariel Mar. Grp., Inc.*, 781 F. Supp. 248, 252 (S.D.N.Y. 1991). Significantly, the fifteenth factor (fraud, wrongdoing, or injustice to third parties) seems to relate more to the second and third elements under Florida law. Third, several of the fifteen factors are arguably more suited for situations involving two corporations as opposed to an individual and a corporation. Fourth, factors are just that – factors. As the California court made clear, the eight factors are not exhaustive, no single factor is determinative, and it is an

---

[9] *See Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141, 1151-52 (Fla. 3d DCA 1995) ("There are at least fifteen factors that have been deemed to be relevant in a determination of whether a corporate entity should be disregarded: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporations by other corporations in the group; (10) whether the corporation in question has been properly used by others of the corporations as if it were their own; (11) financing of subsidiary by parent; (12) informal intercorporate loan transactions; (13) parent and subsidiary's filing of consolidated income tax returns; (14) whether subsidiary's directors act independently in interest of subsidiary rather than in interest of parent; (15) existence of fraud, wrongdoing or injustice to third parties." (citations omitted)).

examination of all of the circumstances that matters. Ultimately, it is evident that the issue encompassed in the first Florida element is identical to the issue encompassed in the first California element. Therefore, Silverman should be prohibited from relitigating the issue of whether he "dominated and controlled [Judgment Debtor] to such an extent that the corporation's independent existence, was in fact non-existent and [Silverman was] in fact [the] alter ego[] of the corporation."[10]

### B. Second Florida Element – Fraudulent or Improper Use

The California Court's Determinations are insufficient to establish the second veil-piercing element under Florida law. "A critical issue in the determination of whether the corporate veil will be pierced for the imposition of personal liability is whether the corporate entity was organized or operated for an improper or fraudulent purpose." *Lipsig*, 760 So. 2d at 187 (quoting *Kanov v. Bitz*, 660 So. 2d 1165, 1166 (Fla. 3d DCA 1995)). Here, there is no contention that Judgment Debtor was organized for an improper purpose. Rather, the dispute concerns whether it was used or operated for an improper or fraudulent purpose, and more specifically, whether the California action establishes this element. To demonstrate use for an improper or fraudulent purpose, Judgment Creditor would have to show that Judgment Debtor was used for a purpose such as to act as "a subterfuge to mislead or defraud creditors, to hide assets, [or] to evade the requirements of a statute or some analogous betrayal of trust." *Id. See also Seminole Boatyard, Inc. v.*

---

[10] I understand why Silverman takes issue with certain findings made by the California court based on what was presented in that matter, but that does not change the fact that the court found as it did or that the California alter ego issue was actually litigated (given that the California alter ego issue was properly raised in accordance with California law, submitted for determination, and determined). *See Wabakken*, 801 F.3d at 1148 ("An issue is actually litigated [w]hen [it] is *properly raised,* by the pleadings or otherwise, and is submitted for determination, and is *determined.*" (quoting *People v. Carter*, 117 P.3d 544, 562 (Cal. 2005))). Therefore, this Court must afford preclusive effect to the California court's determinations, which are sufficient to establish the first veil-piercing element under Florida law.

*Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) ("Under this standard, it must be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them."); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1116-21 (Fla. 1984); *Flooring Depot FTL, Inc., v. Wurtzebach*, No. 4D20-1787, 2021 WL 5348903, at *2 (Fla. 4th DCA Nov. 17, 2021) ("The allegations against Prizzi were that he commingled his business and personal assets and used business monies to make personal purchases. These allegations, without more, fail to meet any of the three factors . . . ." (citing *BEO Mgmt.*, 314 So. 3d at 437)). Succinctly, it is clear that none of the California Court's Determinations allow the Court to conclude that Judgment Debtor was used for such an improper or fraudulent purpose.[11] In other words, it is evident that the precise question presented by the second element was not raised and determined in the California case.

C. **Third Florida Element – Injury to Judgment Creditor**

Judgment Creditor also fails to show that the third element was raised and determined in the California action. As indicated above, the third element does not merely require some injury to a judgment creditor; it requires that "the fraudulent or improper use of the corporate form *caused* injury" to the judgment creditor. In other words, there must be a nexus between the shareholder's fraudulent or improper operations of a company and the injury to the creditor. *Segal v. Forastero, Inc.*, 322 So. 3d 159, 165 (Fla. 3d DCA 2021) (citing *BEO Mgmt.*, 314 So. 3d at 438). "Piercing the corporate veil is not simply a mechanism to provide a plaintiff in a contract action with an after-the-fact, judicially imposed personal guaranty." *Id.*

---

[11] I note that in the section of Judgment Creditor's supplemental brief pertaining to this second element, the only portions of the California court's Minute Order that are referenced are portions relaying what the judgment creditor in the California action had alleged or stated, and not necessarily what the court found. *See* [DE 166] at 4 (citing [DE 152-9] at 7, 8).

13

Nonetheless, Judgment Creditor cites certain cases indicating that improper use of the corporate form automatically causes injury to a company's creditors when it prevents them from collecting debts owed by the company. *See* [DE 166] at 5. Judgment Creditor then concludes that because Judgment Debtor has not paid amounts it owes to Judgment Creditor, Judgment Creditor has shown injury. *Id.* at 6. There are a few issues with Judgment Creditor's injury argument. First, the cases it relies on, which are not binding, arguably conflict with *Segal* and *BEO Mgmt.*, which are binding.[12] Second, as discussed above, the California Court's Determinations do not establish improper use of the corporate form under Florida law. Third, stating that improper use of the corporate form causes injury when it prevents a creditor from collecting its debt is still different from Judgment Creditor's conclusion that injury is established solely because a creditor is unable to collect its debt. Ultimately, nothing in the California case established that Silverman's actions caused injury to Judgment Creditor, who was not a party to the California action.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT IN PART and DENY IN PART** the Motion [DE 149] and find that Silverman is precluded from contesting the first element that must be established to pierce the corporate veil.[13]

---

[12] "In the absence of inter-district conflict or contrary precedent from [the Florida Supreme] Court, it is absolutely clear that the decision of a district court of appeal is binding precedent *throughout Florida*." *Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So. 3d 967, 973 n.4 (Fla. 2009) (citation omitted). *See also Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000) ("Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law. Concomitantly, the Florida Supreme Court has held that [t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme] Court. Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." (internal quotations marks and citations omitted)).

[13] Although Silverman disagrees with the propriety of partial summary judgment, *see* [DE 169] at 15-16, not granting partial summary judgment here would run counter to the purpose of collateral

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 15th day of December 2021.

Jared M. Strauss
United States Magistrate Judge

---

estoppel, which bars Silverman from relitigating issues that were litigated and determined in the California action.